UNITED STATED BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS
DANVILLE DIVISION

IN RE:                              )
                                    )
BENNIE LEE EASTON, III,             )
                                    )    NO. 10-90493
                                    )
        Debtor.                     )
                                    )
                                    )

**MEMORANDUM IN SUPPORT OF DEBTOR'S MOTION TO DENY TRUSTEE'S REQUEST FOR TURNOVER**

The Debtor respectfully requests that this court deny the Trustee's request for turnover of the debtor's 2009 tax refund. First, this court should find the First-Time Homebuyer Tax Credit exempt under Illinois' personal property exemption statute, as it has for the Earned Income and Additional Child Tax Credits. Moreover, this court should deny the Trustee's turnover request because turnover of the homebuyer credit would yield an inequitable result and impede the efficient and speedy administration of justice. Finally, this court should deny the Trustee's request because the additional credits which amounted to the Debtor's tax refund are exempt under established case law.

**I. This Court should find the First-Time Homebuyer Tax Credit exempt under the Illinois personal property exemption statute**

The First-Time Homebuyer Credit, as provided for in Section 36 of the Internal Revenue Code, 26 U.S.C. § 36, should be considered an exempt "public assistance benefit" under 735

ILCS 5/12-1001(g)(1) in the same manner as the Earned Income and Additional Child Tax credits. It should be noted that the term "public assistance benefit" "is not defined by statute or by any published opinion of the Illinois Supreme or appellate courts." *In re Koch*, 299 B.R. 523, 526 at n.5 (Bankr. C.D. Ill. 2003). The Seventh Circuit stated that, when an exemption statute can be interpreted in any of several ways, courts should adopt the interpretation favoring the debtor because the legislature's purpose in enacting property exemption statutes is to protect debtors. *In re Royal*, 397 B.R. 88, 102 (Bankr. N.D. Ill. 2008) (citing *Matter of Barker*, 768 F.2d 191, 196 (7th Cir. 1985)).

When deciding the matter of whether the federal child tax credit is like a public assistance benefit, this Court analyzed several features of the credit. *Koch*, 299 B.R. 523. In that case, the debtor claimed an exemption in the general and additional child tax credit portions of her refund. *Id.* at 524. The trustee in that case sought turnover of the refund amount attributable to those credits. *Id.* The Court noted that the key factor was refundability of the credits: as a rule, nonrefundable credits are not exempt, while refundable credits may be exempt. *Id.* at 527. The general child tax credit, a nonrefundable credit which only reduces tax liability, is not exempt. *Id.*

On the other hand, the additional child tax credit is a refundable credit which may entitle taxpayers to a refund. *Id.* Relevant considerations in determining whether such a credit is exempt as a public assistance benefit include the legislative purpose behind enacting the credit and the affluence of the taxpayers receiving the credit. *Id.* The Koch court noted that because of subsequent changes in the child tax credit laws, the original legislative intent's value in the credit exemption analysis was diminished. *Id.* In the case of the additional child tax credit, this Court observed that only in rare cases would "a middle or upper-income level taxpayer receive a refund of the child tax credit" because of the way the credit was structured. *Id.*

Under this Court's test outlined in *Koch*, the First-Time Homebuyer Tax Credit should be held exempt under Illinois law as a public assistance benefit.

To begin with, the homebuyer credit is a refundable credit – the amount of the credit in excess of tax liability is fully refundable to taxpayers. 26 U.S.C. 36(a) (contained in Subpart C, Refundable Credits). Therefore, further analysis is required.

The legislative intent behind the enactment and continuation of the homebuyer credit shows that the credit was intended to assist Americans who otherwise would not be able to afford housing. Like the exempt Earned Income Credit, the homebuyer credit is "a public benefit delivered through the tax system." *In re Royal*, 397 B.R. 88 at 101 (cites omitted). During debates before passage of the Housing and Economic Recovery Act of 2008, Rep. Lois Capps of California stated that "the hardworking families in our country need help" and that the first-time homebuyer credit would "undoubtedly help young families in [her] district better afford the costs of buying a new home." 154 Cong. Rec. E1555 (daily ed. July 25, 2008). Senator Grassley from Iowa urged passage of the bill because the tax relief package would help "encourage home ownership" and provide "targeted relief." 154 Cong. Rec. S5783 (daily ed. June 18, 2008). Continuing, Sen. Grassley explained the "centerpiece of the bill" is a temporary tax credit designed to help first-time home buyers buy homes, including homes that are in foreclosure. There is a glut of homes on the market. The glut is depressing home values. [The credit would] also help retain home values of others who are not in foreclosure." Id. Congress' purposes for enacting the homebuyer credit were to assist those persons who might not otherwise be able to afford to purchase housing and to provide an incentive to buy housing. This intent parallels the intent behind the earned income credit (to provide an incentive to work). *In re Brockhouse*, 220 B.R. 623 (Bankr. C.D. Ill. 1998) (citing *Sorenson v. Sec'y of Treasury*, 475 U.S. 851, 864

(1986)).

The homebuyer credit, as originally enacted. was designed as a $7,500 interest-free loan, repayable over a 15-year period. 26 U.S.C. 36 (2008); explanation of Senator Cardin 155 Cong. Rec. S9439 (daily ed. Sept. 16, 2009). The American Recovery and Reinvestment Act of 2009 increased the maximum amount of the credit to $8,000 and eliminated the general obligation to repay that amount. Id. Rep. McDermott, from Washington, supported continuation of the credit because it [has made homeownership a reality for thousands of decent, hardworking Americans" 155 Cong. Rec. H11146 (daily ed. Oct. 8 2009). Speaking on the subject of further extending the availability of the credit to June 2010, Senator Cardin explained the benefit of the credit:

> "[The] credit is working. It is getting people who have never owned a home before into the home-buying market, knowing that the Federal Government is providing an incentive. It is estimated the credit is directly responsible for roughly 300,000 to 400,000 purchases this year. . . [The credit has helped] getting more homeowners into homes." 155 Cong. Rec. S9439-40 (daily ed. Sept. 16, 2009).

Like the exempt additional child tax credit, the homebuyer credit is structured in such a way as to benefit those who most need it, rather than affluent taxpayers. The homebuyer credit phases out as a qualifying taxpayer's income increases. See 26 U.S.C. 36(b)(2). As currently written, the Internal Revenue Code provides for the gradual elimination of the homebuyer credit as a claimant's income passes $125,000. Id. The Code also provides for a maximum credit of the lesser of $8,000 or 10% of the home's purchase price, and in no event may a credit be claimed when the qualifying home's purchase price exceeds $800,000. Id. Rather than being a tax vehicle to help affluent taxpayers reduce their tax liability, the homebuyer credit is an essential tool which facilitates homeownership for lower-income taxpayers.

Accordingly, the homebuyer tax credit should be held exempt as a public assistance benefit under Illinois' personal property exemptions. The Congressional intent behind enacting

this refundable credit was to make homeownership a reality for those taxpayers who might not otherwise be financially able to purchase and own a home. Furthermore, the homebuyer credit is structured in such a way as to reduce, and eventually eliminate, the benefit to higher-income taxpayers. Therefore, this credit meets the standard outlined by this Court in *In re Koch*, and should be held to be exempt under Illinois law.

**II. This Court should deny the Trustee's motion for turnover with respect to the homebuyer credit because turnover would be a detriment to the efficient administration of justice and yield inequitable results**

Alternatively, this Court should deny the Trustee's motion for turnover, at least in part, because the $7,500 received by the debtor as a refund due to the homebuyer credit is not entirely his money.

The homebuyer credit is subject to repayment if the claiming taxpayer moves from or sells the qualifying home within three years of claiming the credit. 26 U.S.C. 36(f). This means that the claiming taxpayer is forced to repay the credit should he move from or sell his qualifying home within three years of claiming the homebuyer credit. The Debtor purchased his qualifying home in January 2009, so whether he will be able to keep the credit refund, or will be forced to repay the refund, is unknown until three years have passed. This long waiting period of uncertainty would impede the efficient administration of justice by this court and an undue burden on debtors. While § 350 of the Bankruptcy Code provides for reopening discharged cases "to administer assets . . . or for other cause" the Federal Rules of Bankruptcy Procedure state that the rules, including Rule 5010 on reopening discharged cases, "shall be construed to secure the

just, speedy, and inexpensive determination of every case and proceeding." Fed. R. Bankr. P. 1001.

For example, if this Court were to order turnover of the $7,500 refund and if the Debtor were to be forced to move from his residence, the Debtor would owe the Trustee at least $7,500 per the turnover order, and he would owe the Internal Revenue Service an additional $7,500 because he moved from the qualifying home before the three-year recapture period expired. That result would defeat the fundamental purpose of the Bankruptcy Code, which is to provide debtors with a fresh start, because it would leave this Debtor, and all similarly-situated debtors, with a large debt that must be repaid twice. Even if the Debtor in this case remains in the qualifying home for the three-year period, and therefore is not required to repay the tax credit to the Internal Revenue Service, that fact cannot be known until three years have elapsed. In either case, the administration of such a case would not be just, efficient, or speedy. Reopening bankruptcy cases after as many as three years have passed is inefficient, slow, burdensome to debtors seeking a new financial beginning. As a practical matter, holding the homebuyer credit exempt is the approach that would best give effect to the Bankruptcy Code's fresh start policy.

Furthermore, if the Trustee is granted turnover of the $7,500 credit refund, presumably the Trustee would distribute those funds among the various creditors listed in the Debtor's schedules. When enacting the homebuyer credit legislation, Congress characterized the credit as an interest-free loan, and later provided for the forgiveness of that "loan" if home purchasers remain in their qualifying homes for at least three years. Taking the Debtor's proceeds under this program – basically a loan – and using those funds to satisfy the obligations of other creditors while not discharging the Debtor's potential obligation to repay the "loan" to the I.R.S. would yield an inequitable result. Consequently, this Court should deny the Trustee's demand for

turnover of the homebuyer credit refund.

**III. This Court should deny the Trustee's turnover motion because the Debtor's tax refund consists of exempt credits**

Finally, the Trustee's motion for turnover should be denied because the Debtor's 2009 tax refund consists of entirely exempt funds (should this Court rule in favor of the Debtor on the homebuyer credit). Specifically, the Debtor's tax refund consisted of $7,500 in homebuyer credit; $1,849 in additional child tax credit; $2,458 in Earned Income Credit; and $489 in presumed overpayment of tax. Considering that the Debtor has remaining about $1,480 in "wildcard" exemption pursuant to Illinois' exemption statute, there would be nothing to turn over to the Trustee because all portions of the Debtor's refund are exempt.

As this Court has held, the additional child tax credit is exempt under 735 ILCS 5/12-1001(g) as a public assistance benefit. *In re Koch*, 299 B.R. 523 at 528. Similarly, the refund amount attributable to the Earned Income Credit is exempt under Illinois law. *In re Brockhouse*, 220 B.R. 623 at 625. The remaining refund amount of $489 is more than covered by the Debtor's remaining "wildcard" exemption under 735 ILCS 5/12-1001(b). Since the funds sought by the trustee are exempt, the Trustee's motion for turnover should be denied.[1]

In conclusion, this Court should deny the Trustee's motion for turnover. Exemption

---

[1] This Court noted an Oklahoma bankruptcy court's question as to why more effort was not spent by counsel, trustees, and courts to allow impoverished debtors to keep their tax credits rather than expending time, effort and legal skills in trying to take credits away from such debtors, who desperately need the fresh start the Bankruptcy Code was intended to provide. *In re Brockhouse*, 220 B.R. 623 at 625 (quoting *In re Barnett*, 214 B.R. 632, 634 (Bankr. W.D. Okla. 1997)). This observation seems particularly apt in this case, where the Trustee seeks turnover of tax refunds due to earned income and additional child tax credit, which this Court has already held exempt under Illinois law.

statutes are to be liberally construed, and if any doubt or alternative interpretation exists, such statutes should be interpreted in a manner favoring the debtor. *In re Royal*, 397 B.R. 88 at 102 (citing *Matter of Barker*, 768 F.2d 191, 196 (7th Cir. 1985)). The First-Time Homebuyer Tax Credit should be held exempt as a public assistance benefit under Illinois law, because it is refundable, Congress intended the credit to help persons purchase homes, and the credit is structured to phase out as taxpayers' incomes rise. This Court found these factors important in determining that the earned income and additional child tax credits are exempt, and the homebuyer credit is quite similar to those exempt credits. Also, requiring Debtors to turn over this credit refund may expose them to a double liability should those Debtors become disqualified from forgiveness of the credit. As the burden of proof is on the party objecting to exemptions, the Trustee's motion for turnover should be denied because the Trustee has failed to establish the non-exempt nature of the Debtor's tax refund credits. Fed. R. Bankr. P. 4003(c).

Respectfully submitted,
Bennie Lee Easton, III

By: /s/ Brian D. Pondenis

Attorney for Debtor
OSTLING & ASSOCIATES
201 W. Olive St.
Bloomington, IL 61701

## CERTIFICATE OF SERVICE

Notice has been **electronically mailed** to the following:

US Trustee
James R. Inghram, Chapter 7 Bankruptcy Trustee

Notice has been **mailed** to the following by enclosing the same in an envelope addressed to such person(s) at their business address, as disclosed by the pleadings of record herein, with postage fully prepaid, and by depositing said envelope in a United States Post Office mail box in Bloomington, Illinois :

    The undersigned certifies that a copy of the foregoing instrument was served upon the person(s) listed above on the 15th day of September, 2010.

/s/ Brian D. Pondenis